SEALED

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Holding a Criminal Term**
**Grand Jury Sworn in on November 1, 2013**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 14-** |
| | : | |
| | : | **Grand Jury Original** |
| **v.** | : | |
| | : | **VIOLATIONS:** |
| | : | |
| **MARK ALAN WALL,** | : | **18 U.S.C. § 1341 (Mail Fraud);** |
| | : | **18 U.S.C. § 2314 (Interstate** |
| | : | **Transportation of Money Taken** |
| **Defendant.** | : | **By Fraud);** |
| | : | **18 U.S.C. § 1957 (Money** |
| | : | **Laundering);** |
| | : | **22 DC Code §§ 3211(b) and 3212(a)** |
| Case: 1:14−cr−00219 | : | **(First Degree Theft).** |
| Assigned To : Jackson, Amy Berman | : | |
| Assign. Date : 11/4/2014 | : | **FORFEITURE:** |
| Description: INDICTMENT (B) | : | **18 U.S.C. §§ 981(a)(1)(C), 982(a)(1),** |
| | : | **(a)(2)(B), 28 U.S.C. § 2461(c), 21 U.S.C.** |
| | : | **§ 853(p).** |

## INDICTMENT

The Grand Jury charges that:

## COUNT ONE

### Mail Fraud

### Introduction

At all times material to this Indictment:

1.     The defendant MARK ALAN WALL was a real estate agent and broker licensed in the District of Columbia and elsewhere, with his place of business in the District of Columbia.

2.     In order to recruit clients, the defendant MARK ALAN WALL advertised himself as capable in assisting buyers in finding and purchasing residential real estate in the District of

1

Columbia. The defendant WALL owned and operated a business by the name of "Woof Real Estate."

3.     As a licensed real estate agent and broker, the defendant MARK ALAN WALL would from time to time receive clients' money to be held for them in trust. Brokers, like defendant WALL, who receive client's money, must keep those funds in a separate escrow bank account. They may not commingle the escrow funds with their own funds, use the escrow funds for a purpose other than the purpose for which they were entrusted to them, or fail to return the money when directed by the client.

4.     The defendant MARK ALAN WALL maintained two checking accounts at BB&T in the name of his business, having opened the accounts at the BB&T branch in the 1300 block of Wisconsin Avenue, N.W., in the District of Columbia.  One account was an escrow account; the other was a business operating account.

5.     Typically, when buyers of real estate would make an offer to buy residential real estate, they customarily would put down some money as a "deposit" on the offer as a show of their earnest interest in purchasing the property.  This money was referred to as an "earnest money deposit," and would be placed in an escrow account with either the buyer's broker or the broker for the seller.  If the offer were accepted, then the earnest money deposit would become part of the buyer's downpayment and would be held by one of the brokers or transferred to the settlement company.

6.     If the earnest money deposit were in an amount in excess of the real estate commissions owed, then the broker must transfer the money to the settlement company which would handle the closing of the sales transaction. The settlement company would handle:

transferring legal title to the property from the seller to the buyer; paying any existing mortgage on the property; collecting the new mortgage loan and downpayments; paying the seller, real estate commissions, taxes, and other expenses related to the sale; distributing real estate sales commissions to the buyers' and sellers' brokers; and filing the appropriate papers with the land records' office.

### The Scheme to Defraud

7.      From in or about July 2010 through at least May 2013, within the District of Columbia and elsewhere, the defendant, MARK ALAN WALL, devised and intended to devise a scheme and aided and abetted the scheme to defraud and for obtaining money and property by materially false and fraudulent pretenses, representations, and promises.

### The Purpose of the Scheme to Defraud

8.      It was the purpose of the scheme to defraud that the defendant, MARK ALAN WALL, would steal money from clients and others who entrusted their money to him.

### The Manner and Means of the Scheme to Defraud

9.      It was a part of the scheme to defraud that between July 2010 and February 2013, in the District of Columbia, the defendant MARK ALAN WALL entered into agreements with clients to serve as their agent in purchasing residential property in the District of Columbia.  The agreements stated that the clients would not be paying the defendant MARK ALAN WALL an advance fee, nor did they agree to pay a percentage of the purchase price to the defendant MARK ALAN WALL. Instead, as in an arrangement typical of residential real estate sales of existing homes, the defendant MARK ALAN WALL would be paid his commission by the seller of the property upon the completion of the transaction.

10.     It was a further part of the scheme to defraud that the defendant MARK ALAN WALL convinced his clients to provide as their earnest money deposit an amount of money greater than typically used, saying that he would hold it in escrow for their benefit to demonstrate that they had sufficient money to close on future sales.

11.     It was a further part of the scheme to defraud that the defendant MARK ALAN WALL assured his clients that the money remained theirs unless and until they purchased a property.

12.     It was a further part of the scheme to defraud that if the clients were unable to quickly succeed with an offer to purchase a home, the defendant MARK ALAN WALL would convince them to deposit additional money telling them that the additional money would strengthen their negotiating power for future offers.

13.     It was a further part of the scheme to defraud that the defendant MARK ALAN WALL deposited the clients' earnest money deposit checks into his operating account, rather than the escrow account.

14.     It was a further part of the scheme to defraud, that if the clients became dissatisfied with him and asked about their money, the defendant MARK ALAN WALL assured his clients that their earnest money deposit money was maintained in an escrow account held at a federally insured bank.

15.     It was a further part of the scheme to defraud that the defendant MARK ALAN WALL did not maintain his clients' money for their benefit; rather, he spent their money on himself and his expenses within a few weeks or months of receiving the funds, including the following:

4

(a) In July 2010, the defendant MARK ALAN WALL received $20,000 in an earnest money deposit from an individual identified in these proceedings as J.K.; by September 2010, the defendant MARK ALAN WALL had spent all but $60 of this money on himself.

(b) In November 2010, the defendant MARK ALAN WALL received $70,000 in earnest money deposits from individuals identified in these proceedings as G.J. and J.K.; by March 2011, the defendant MARK ALAN WALL had spent their money on himself.

(c) Between April 2012 and January 2013, the defendant MARK ALAN WALL received approximately $50,000 in earnest money deposits from individuals identified in these proceedings as S.A. and H.A.; within three months, the defendant MARK ALAN WALL had spent their money on himself.

16.     It was a further part of the scheme to defraud that in May 2013, the defendant MARK ALAN WALL borrowed money from an individual identified in these proceedings as L.H., falsely representing that he needed $27,000 to pay expenses of a real estate closing; having received the money from L.H., the defendant MARK ALAN WALL used the money to replace the money he had stolen from S.A. and H.A. in order that the settlement on their home may proceed.

17.     It was a further part of the scheme to defraud that after the closing on S.A. and H.A.'s home, the defendant MARK ALAN WALL falsely represented to L.H. that the settlement did not occur and that S.A. and H.A. were forced to file a law suit against the sellers of the property.

18.     It was a further part of the scheme to defraud that the defendant MARK ALAN WALL did not repay L.H. for the loan he (WALL) had said was for the closing of S.A. and H.A.'s home.

19.     It was a further part of the scheme to defraud that the defendant MARK ALAN WALL refused his clients' requests to return their unused earnest money deposits.

20.     On or about November 8, 2010, within the District of Columbia and elsewhere, the defendant MARK ALAN WALL, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud and for obtaining money and property by materially false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by Federal Express, a commercial interstate carrier, from J.K. in the District of Columbia, to the defendant WALL at the 1400 block of Emerson Avenue, McLean, Virginia mail matter, that is, a check in the amount of approximately $25,000 for an earnest money deposit.

**(Mail Fraud, in violation of
Title 18, United States Code, § 1341).**

### COUNT TWO

#### Interstate Transportation of Money Taken by Fraud

21.     Paragraphs 1 through 19 of Count One of this Indictment are hereby realleged and incorporated by reference as if set out in full.

22.     From in or about July 2010 through in or about May 2013, in the District of Columbia and elsewhere, the defendant, MARK ALAN WALL, did unlawfully transport and cause to be transported in interstate commerce from the District of Columbia to the Commonwealth of Virginia money stolen, converted, and taken by fraud, to wit, money from his clients, of the value of $5,000 or more, knowing the same to have been stolen, converted, and taken by fraud.

**(Interstate Transportation of Money Taken by Fraud,
in violation of Title 18, United States Code, § 2314).**

## COUNT THREE

### Money Laundering – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity

23.     Paragraphs 1 through 19 of Count One of this Indictment are hereby realleged and incorporated by reference as if set out in full.

24.     On or about January 21, 2011, in the District of Columbia and elsewhere, the defendant, MARK ALAN WALL, did knowingly engage and attempt to engage in a monetary transaction, that is, the purchase of a 2009 Range Rover Sport partially paying for the vehicle with a cashier's check in the amount of $11,000 which was purchased with money belonging to his real estate clients and should have been held in trust for those clients, by, through, and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, Mail Fraud, in violation of 18 U.S.C. § 1341, and Interstate Transportation of Money Taken by Fraud, in violation of 18 U.S.C. § 2314.

**(Money Laundering – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of Title 18, United States Code, § 1957).**

## COUNT FOUR
### (THEFT IN THE FIRST DEGREE)

25.     Paragraphs 1 through 19 of Count One of this Indictment are hereby realleged and incorporated by reference as if set out in full.

26.     From between in or about July 2010, until in or about May 2013, in a continuing course of conduct, in the District of Columbia, the defendant, MARK ALAN WALL, wrongfully obtained and used property of another, that is, money, worth in excess of $1,000, that is, $90,000 from J.K. and G.J. with the intent to deprive J.K. and G.J. of the right and benefit of the property

7

and to appropriate the property to his own use and to the use of third persons.

**(Theft in the First Degree, Aiding and Abetting, in violation of Title 22, District of Columbia Code, §§ 3211(b) and 3212(a)).**

## COUNT FIVE
### (THEFT IN THE FIRST DEGREE)

27.     Paragraphs 1 through 19 of Count One of this Indictment are hereby realleged and incorporated by reference as if set out in full.

28.     From between in or about July 2010, until in or about May 2013, in a continuing course of conduct, in the District of Columbia, the defendant, MARK ALAN WALL, wrongfully obtained and used property of another, that is, money, worth in excess of $1,000, that is, $27,000 from L.H. with the intent to deprive L.H. of the right and benefit of the property and to appropriate the property to his own use and to the use of third persons.

**(Theft in the First Degree, Aiding and Abetting, in violation of Title 22, District of Columbia Code, §§ 3211(b) and 3212(a)).**

## FORFEITURE ALLEGATION

1.     Upon conviction of the offense alleged in Count One of this Indictment, the defendant, MARK ALAN WALL, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The United States will seek a forfeiture money judgment against the defendant in the amount of at least $302,800.

2.     Upon conviction of the offense alleged in Count Two of this Indictment, the defendant, MARK ALAN WALL, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, pursuant to 18

8

U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  The United States will seek a forfeiture money

judgment against the defendant in the amount of at least $5,000.

       3.     Upon conviction of the offense alleged in Count Three of this Indictment, the

defendant, MARK ALAN WALL, shall forfeit to the United States any property, real or

personal, involved in this offense, or any property traceable to such property, pursuant to 18

U.S.C. § 982(a)(1).  The property subject to forfeiture includes a 2009 Land Rover Range Rover

Sport, Vehicle Identification Number SALSF25449A198287.  The United States will seek a

forfeiture money judgment against the defendant in the amount of at least $11,000.

       4.     If any of the property described above as being subject to forfeiture, as a result of

any act or omission of the defendant:

          a.     cannot be located upon the exercise of due diligence;

          b.     has been transferred or sold to, or deposited with, a third party;

          c.     has been placed beyond the jurisdiction of the Court;

          d.     has been substantially diminished in value; or

          e.     has been commingled with other property that cannot be divided without
                 difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the

value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), (a)(2)(B), Title 21, United States Code, Section 853(p), Title 28, United States Code, Section 2461(c)).**

A TRUE BILL

FOREPERSON.

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA

10